OPINION OF THE COURT
Gabrielli, J.
This appeal involves the application of a 1975 amendment to section 421-a of the Real Property Tax Law to *360 multiple dwellings built before the amendment’s effective date. Although a prior decision of this court has apparently-determined this issue (see Teleon Realty v City of New York, 50 NY2d 824, affg on mem below 68 AD2d 858), appellants question the correctness of that holding. We conclude that the 1975 amendment is applicable to appellants’ buildings and overrule our prior decision in Teleon Realty to the extent that it may conflict with our holding herein.
In 1971, the Legislature, responding to the serious housing shortage in New York City, enacted section 421-a of the Real Property Tax Law.[1] As originally enacted, this statute provided that new multiple dwellings, on which construction commenced after July 1, 1971 and before January 1, 1973 and was completed no later than December 31, 1974, “shall be exempt from taxation for local purposes” (L 1971, ch 1207, § l).[2] To be eligible for exemption, construction was to be undertaken on vacant or underutilized land or on land improved with a nonconforming use. So that the city would suffer no loss of revenue, the statute required that taxes still be paid in an amount equal to the taxes paid on the vacant or underutilized land in the year preceding construction (the so-called “mini-tax” provision). In exchange for the tax exemption, rents to be charged upon initial occupancy were to be set at least 15% less than the prevailing rents for comparable units and were thereafter to be subject to rent stabilization laws. The exemption afforded under the statute has been extended periodically to multiple dwellings on which construction began in later years.[3]
The intent behind the exemption is clear. The Legislature hoped to encourage the construction of new, generally *361 available, multiple-unit residential buildings on previously underutilized property. The city determined, however, that this goal was not furthered by extension of the exemption to what is termed “accessory use space” — those areas of a multiple dwelling, such as parking areas, laundry rooms and community facilities, which are considered merely incidental to the residential space. Accordingly, from July 1, 1971 until July 1, 1975, the city refused to exempt that portion of the multiple dwelling’s floor area devoted to such uses. As regards mixed-use structures (i.e., those buildings having both commercial and residential floor space), the city denied exemption to the commercial space.
On August 9, 1975, the amendment to section 421-a, which is the subject of this appeal, was approved (L 1975, ch 857, § 1). This amendment, in addition to defining the term “multiple dwelling”[4] for purposes of this statute for the first time and enacting numerous additional provisions not here relevant, provided that as of July 1, 1975, if the aggregate floor area of commercial, community facility and accessory use space exceeds 12% of the aggregate floor area of “any multiple dwelling granted tax exemption pursuant to this section on or subsequent to July [1,1971], there shall be a diminution of such tax exemption” in an amount equal to the excess of such space over 12%, “provided that no such exemption for commercial, community facility and accessory use space shall be applicable prior to July [1, 1975].” The city interpreted this amendment as . affording a 12% exemption of the area described for all multiple dwellings which were qualified to receive the section 421-a exemption, making no distinctions based upon the time that construction on the building commenced. Thus, from July 1,1975 until March 13,1980, the city granted the 12% exemption to all qualified section 421-a multiple dwellings, including those owned by appellants.
*362 In March of 1980, however, the Appellate Division rendered its decision in Teleon Realty Corp. v City of New York (68 AD2d 858, 859, supra),[5] and, in the course of its memorandum decision, commented that the “1975 amendment is by its terms not applicable to properties where construction was begun before January, 1975”, citing section 3 of the amending legislation. In apparent response to this statement, the city determined that it had incorrectly granted the 12% exemption to pre-1975 multiple dwelling owners and notified those owners, including appellants herein, that the 12% exemption would no longer be afforded their multiple dwellings.
Appellants then commenced the present article 78 proceeding and declaratory judgment action challenging this determination by the city.[6] Appellants argued strenuously that the statements in Teleon Realty regarding the 1975 amendment’s applicability amounted to dicta, because the issue was never presented to the Appellate Division, which commented upon it gratuitously. Special Term determined, however, that notwithstanding the fact that the issue decided in Teleon Realty was unnecessary to the disposition of that case, the statements were intended as a guide for future conduct and as such could not be disregarded as dicta. Thus, the court held that appellants were not entitled to the 12% exemption afforded by the 1975 amendment.
The Appellate Division noted that appellants had argued persuasively that its statements in Teleon Realty may have been incorrect. In reaching that earlier decision, it had not *363 had the benefit of the analysis presented on the instant appeal, nor had it been made aware of the fact that the city had itself interpreted the 1975 amendment to be applicable to pre-1975 multiple dwellings. The court, although apparently agreeing with the merits of appellants’ arguments, nevertheless felt constrained by our court’s affirmance of its decision in Teleon Realty “for reasons stated in the memorandum at the Appellate Division” (50 NY2d 824, 826, supra). Appellants were then granted leave to appeal to this court.
Preliminarily, it must be determined whether appellants may properly obtain the relief they seek by way of an article 78 proceeding or declaratory judgment action, or if they must, as respondents urge, pursue their claims by way of a tax certiorari proceeding (Real Property Tax Law, art 7; New York City Charter, §§ 163-165; Administrative Code of City of New York, § 166-1.0). Appellants press two arguments on this appeal: first, appellants contend that the city has wrongfully denied a full exemption for accessory use space in qualified multiple dwellings afforded by the initial version of section 421-a, and that the exemption is not limited by the 1975 amendment; and, second, appellants argue alternatively that the 1975 amendment affords them a 12% exemption for their combined commercial, community facility and accessory use space.
It is well recognized that where a challenge is made to the taxing authority’s jurisdiction over the subject property, the settled rule that review of a tax assessment may be obtained only by way of the statutory certiorari procedures is not applicable (Dun & Bradstreet v City of New York, 276 NY 198, 206; Matter of Troy Towers Redevelopment Co. v City of Troy, 51 AD2d 173, affd on opn below 41 NY2d 816). Thus, if the claim is made that the subject property is wholly exempt from taxation, review by way of collateral proceedings is appropriate. Appellants argue that, insofar as they claim an entire exemption for their accessory use space, their case falls within this rule. We disagree with this contention, for even if appellants were granted the entire exemption for accessory use space that they seek, the property would still be subject to taxation by *364 virtue of the “mini-tax” provision of section 421-a.[7] Thus, inasmuch as the property is subject to some degree of taxation, the taxing authority has jurisdiction over it.
Such a challenge to jurisdiction, however, is not the only situation in which a taxpayer may properly forego the statutory procedure and mount a collateral attack on the taxing authority’s action. Although it has been stated frequently that taxpayers seeking partial exemption are relegated to tax certiorari proceedings for review of their assessment (e.g., Young Women’s Christian Assn. of City of N. Y. v City of New York, 217 App Div 406, 410, affd 245 NY 562; Cablevision Systems Dev. Co. v Board of Assessors of County of Nassau, 49 NY2d 866, 867), we have recognized that, at least under some circumstances, judicial review may be sought by other means. Thus, in Matter of Watchtower Bible & Tract Soc. of N. Y. v Lewisohn (35 NY2d 92), we held an article 78 proceeding to be an appropriate method of challenging the taxing authority’s action in withdrawing a previously afforded exemption, notwithstanding the fact that if the tax exemption were restored, it would only be a partial exemption. We noted that, under these circumstances, the matter did not involve a review of a tax assessment on grounds of partial exemption, for the apportionment between the taxable and exempt portions of the property had been previously determined and had not been challenged. The only relief sought was to have the taxing authority remove from the tax rolls property previously held to be exempt.
To the extent that appellants herein seek restoration of the 12% exemption for combined commercial, community facility and accessory use space, which exemption was previously granted but later withdrawn by the taxing authority, the case falls squarely within the holding of Watchtower Bible & Tract, and resort to tax certiorari proceedings was not required. Although appellants’ alter *365 native claim to total exemption for accessory use space, which was never granted by the city, does not fall within that holding, we nevertheless conclude that, under the circumstances presented in this case, the relief sought may be pursued in the manner in which appellants have proceeded. Appellants are seeking only a legal interpretation of an exemption statute as to which no factual question is presented, and that interpretation is sought in connection with a claim properly brought by way of article 78 proceeding or declaratory judgment action. In this limited situation, we hold that appellants are not relegated to tax certiorari proceedings to seek review of the city’s alleged wrongful denial of the accessory use space exemption.
We turn, then, to the substantive issues raised on the appeal. Appellants, in seeking an interpretation of section 421-a and its 1975 amendment which would afford them a tax exemption for accessory use space, urge us to disregard certain statements made in Teleon Realty Corp. v City of New York (68 AD2d 858, affd on mem below 50 NY2d 824, supra), which are contrary to their position, as dicta. At issue in Teleon Realty was the proper method of computation of the “mini-tax” required by section 421-a. As noted previously, during the period of exemption, taxes must be paid on the property at least in an amount equal to that paid in the tax year preceding construction. The building involved, a pre-1975 multiple dwelling, contained 22 floors of commercial space and 30 floors of residential space, which were separately owned as part of a condominium plan. Plaintiffs and the city apparently agreed that the commercial and residential portions of the building should be separately assessed for purposes of computation of the mini-tax. Plaintiffs argued, however, that no taxes need be paid on the residential portion of the premises so long as the taxes paid on the commercial portion exceeded the mini-tax. Special Term, assuming the applicability of the 12% exemption afforded by the 1975 amendment, as did the parties, held that for the exemption period following the effective date of the amendment (July 1, 1975), the mini-tax should be computed as follows: the entire building should be assessed as a single unit; the normal tax established; the exemption diminished by the percentage of *366 commercial floor area in excess of 12% of the aggregate floor area; and where, as in that case, there were separate owners of the commercial and residential areas, the net exemption should be apportioned between them and deducted from the respective taxes due.
The Appellate Division, in a memorandum subsequently adopted by this court, agreed that the exemption statute could not reasonably be interpreted as permitting taxes paid on the commercial space to discharge the obligation to pay the minimum tax, but stated that this did not mean that the residential portion should be assessed for the entire minimum tax. The court held that the commercial and residential portions of the property should be separately assessed and the minimum tax on the residential portion should be its appropriate portion of the dollar tax paid on the whole property for the base year. In reaching this conclusion, the Appellate Division expressly stated that the 1975 amendment granting the limited exemption to 12% of commercial space “is by its terms not applicable to properties where construction was begun before January, 1975” (68 AD2d, at p 859), and thereafter noted that, given the inapplicability of the exemption, it made no practical difference whether the trial court’s approach of assessing the building as a single unit or its own approach of assessing the two portions separately, were followed (68 AD2d, at p 860).
Notwithstanding appellants’ argument herein that the Appellate Division was never asked to pass upon the question of the general applicability of the 1975 amendment to pre-1975 multiple dwellings, inasmuch as its applicability was never disputed, we agree with the courts below that the statements may not be disregarded as dicta, because they contributed to the fixing of tax liabilities. We believe it important, however, that neither the Appellate Division nor this court was squarely presented with that question and that neither court had the benefit of the adversary presentation necessary to the proper resolution of so complex an issue. Indeed, the particular issue was in no way raised, briefed or addressed on oral argument in our court. Given this, and notwithstanding the critical importance of the role of precedent in our judicial system, *367 we nevertheless conclude that a reassessment of the holding in Teleon Realty is warranted. Mindful of our obligation to properly interpret the terms of a statute and to effectuate legislative intent, we believe it proper to reevaluate the question passed upon in Teleon Realty in the context of the full adversary presentation now afforded us.
In interpreting the scheme of exemption provided by section 421-a and its amendments, we deal first with the scope of the exemption afforded under the original version of the statute (L 1971, ch 1207, § 1). The language of this initial enactment provided only that “[n]ew multiple dwellings * * * except hotels and structures containing less than ten dwellings units” shall be exempt from taxation for local purposes during a certain period. No definition of “multiple dwelling” was provided, nor was there any mention of either commercial space or accessory use space. That being so, we believe it proper to look to the definition of “multiple dwelling” contained in subdivision 7 of section 4 of the Multiple Dwelling Law: “a dwelling which is either rented, leased, let or hired out, to be occupied, or is occupied as the residence or home of three or more families living independently of each other”.[8] “Dwelling” is defined in subdivision 4 of the same section of the Multiple Dwelling Law as “any building or structure or portion thereof which is occupied in whole or in part as the home, residence or sleeping place of one or more human beings”. The conception of the term “multiple dwelling” that arises out of these definitions fully supports appellants’ contention that the city improperly limited the scope of the exemption to strictly residential floor area. Areas customarily incidental to actual residential living area, such as laundry rooms, parking facilities, etc., should be considered as fully a part of the multiple dwelling as the living area itself. The cost of maintenance of such areas would ordinarily be an important factor in the establishment of rent. Thus, the Legislature’s goal of encouraging construction of affordable housing is furthered by the inclusion of such accessory use space within the scope of the exemption. Of course, this objective is not encouraged by *368 extending the exemption to commercial areas, and the city quite properly interpreted the statute as excluding such space from tax exemption.
Our interpretation of the statute as affording exemption to accessory use areas in addition to living space is buttressed by the language of the 1975 amendment to section 421-a. The amendment provides that, as of July 1,1975, in the event that the aggregate floor area of commercial, community facility and accessory use space exceeds 12% of the aggregate floor area of a qualified section 421-a multiple dwelling, “there shall be a diminution of such tax exemption” in an amount equal to the excess of such space over 12% of the aggregate floor area (L 1975, ch 857, § 1 [emphasis added]). We believe that the language of diminution employed by the Legislature indicates its belief that at least some exemption of this nature had previously been afforded.[9] Otherwise, there would be no need to speak in terms of diminution; rather, the exemption, if never previously granted, would more likely have been expressed in terms of an additional exemption.
Thus, we agree with appellants that the city has from the start improperly denied tax exemption to that space properly considered accessory use space. It remains to be determined, however, what effect, if any, the 1975 amendment has on the right of owners of pre-1975 multiple dwellings.
The amendment provides a 12% exemption for the commercial, community facility and accessory use space of “any multiple dwelling granted tax exemption pursuant to this section on or subsequent to July [1, 1971] provided that no such exemption * * * shall be applicable prior to July [1, 1975]”. If this were the only relevant language of the exemption’s applicability, we would have no difficulty in interpreting it as applicable to pre-1975 multiple dwellings, insofar as tax obligations arising after July 1, 1975 are involved. However, section 3 of chapter 857 of the Laws of 1975 further provides that: “This act shall take effect *369 immediately and be retroactive to applications submitted for construction begun on or after January [1, 1975] provided, however, that this act shall not affect the rights and obligations imposed by section [421-a] upon construction begun before January [1, 1975] provided that such construction is completed prior to December [31, 1979]”. It is the latter part of this section which provides the seeming conflict and upon which the statements in Teleon Realty concerning applicability of the amendment are based.
Given this apparent conflict between two provisions of the same legislation, we must, if possible, resolve the conflict in a manner which effectuates the legislative intent, but which avoids rendering one of the provisions superfluous. Appellants urge that we resolve the conflict by holding that section 3 of chapter 857, the effective date provision, preserves the previous full exemption for accessory use space, while the exemption language grants an additional right to exemption of up to 12% of combined commercial, community facility and accessory use space (to the extent that the claimed accessory use space by itself does not exceed 12%). Although we agree with appellants that the 1975 amendment is applicable to pre-1975 multiple dwellings,[10] we do not interpret the statutory scheme to grant an additional benefit to such multiple dwellings; rather, we conclude that the 1975 amendment was intended to limit the exemption previously afforded for accessory use space.
Our conclusion that the 1975 amendment is applicable to pre-1975 multiple dwellings rests upon the specific language of exemption employed therein. The 12% exemption is, by its terms, applicable to all multiple dwellings granted tax exemption pursuant to section 421-a on or subsequent to July 1, 1971. We decline to read the more general language of the effective date provision as rendering the 12% exemption afforded superfluous. To interpret the amendment as granting an additional exemption, as appellants suggest, however, would be to ignore that portion of the exemption language which provides that “there shall be a diminution of such tax exemption” to the extent *370 that commercial and accessory use space is in excess of 12% of the aggregate floor area. Thus, we hold that appellants are entitled to the exemption set forth in the 1975 amendment, but are limited to the extent of exemption set forth therein.[11]
Accordingly, the order of the Appellate Division should be reversed, with costs, the motions to dismiss denied, and the certified question answered in the negative.
Chief Judge Cooke and Judges Jasen, Jones, Wachtler, Fuchsberg and Meyer concur.
Order reversed, etc.

. The statute was originally numbered section 421 (L 1971, ch 1207, § 1), but was renumbered section 421-a by section 1 of chapter 110 of the Laws of 1977. For the sake of clarity, we refer to the statute solely by its current numbering.

. Full exemption was granted during construction and for two years following completion of construction. Thereafter, the scope of the exemption was gradually reduced until, in the eleventh year following construction, the exemption was to be completely eliminated.

. (L 1973, ch 480, § 1; L 1975, ch 857, § 1; L 1977, ch 560, 8 1; L 1981, ch 995, 8 1.) Additional provisions have been added to the statute through these several amendments.

. “Multiple dwelling” is defined as: “A dwelling which is to be occupied or is occupied as the residence or home of three or more families living independently of one another, whether such dwelling is rented or owned as a cooperative or condominium”. This definition remains in the present law (Real Property Tax Law, § 421-a, subd 1, par c).

. The Appellate Division decision was eventually affirmed by this court “for reasons stated in the memorandum at the Appellate Division” (50 NY2d 824, 826, supra).

. The article 78 proceeding and declaratory judgment action are, in all relevant respects, identical in nature. Appellants have instituted both to ensure that they have pursued the proper procedural route to obtaining an interpretation of the 1975 amendment to section 421-a.
Appellants also commenced a class action challenging the city’s failure to comply with sections 1510 and 1512 of the New York City Charter, in eliminating the 12% exemption after the close of the assessment rolls and without the required 10 days’ notice. Special Term granted appellants’ motion for summary judgment in this action. The Appellate Division affirmed this determination and denied respondents’ motion for leave to appeal to this court. Accordingly, the issues decided in the class action are not presented on this appeal.

. The statute provides that taxes shall be paid during the period of exemption at least in the amount of taxes paid on the property during the tax year preceding the commencement of construction. In addition, although not set forth in the record on this appeal, appellants’ pre-1975 multiple dwellings are presumably subject to taxation by virtue of the phasing-out of the tax exemption during the 10 years following completion of construction.

. We note that much of this definition was ultimately adopted by the Legislature for use in interpreting section 421-a. See footnote 4, supra.

. As noted, we believe the exemption previously afforded was limited to accessory use space. It cannot be assumed that the Legislature intended to exempt commercial space under the original enactment.

. Thus, we conclude that the statements in Teleon Realty to the contrary are erroneous and overrule the decision therein to that extent.

. This interpretation does not, as appellants urge, necessarily render the effective date provision superfluous. Numerous other provisions were added to section 421-a by the amending legislation, and the general language regarding its effective date and the effect of the amendment upon owners of pre-1975 multiple dwellings presumably would apply to those provisions which do not contain specific language indicating a contrary intent.