*304 OPINION OF THE COURT
Edward J. Greenfield, J.
The motion for reargument is granted and on reargument, the prior decision is modified as follows:
The question presented in this petition is whether the partial tax exemption granted by RPTL 421-a is applicable to the commercial space in a condominium building.
If a building qualifies under RPTL 421-a, it is entitled to a partial exemption from local real estate taxes during the period of construction and for a 10-year period thereafter. During construction and for a two-year period following completion, there is a 100% "qualified” exemption followed by decreasing levels of exemption for the next eight years. The exemption is qualified or partial in that the owner must, in any event, pay the real property tax on the assessed valuation of the land and any improvements upon it in effect during the year preceding the commencement of construction. This is referred to as the "mini-tax.” That section also provides that the percentage of the exemption shall be reduced by the per cent of space that "commercial, community facility and accessory use space” exceeds 12%.
In 1981, petitioner commenced construction of a building at 40 East 94th Street containing 223 residential units, a parking garage and four retail commercial units. In 1982, petitioner applied for a preliminary certificate of eligibility for an exemption pursuant to RPTL 421-a. The Department of Housing Preservation and Development of the City of New York issued a preliminary certificate of eligibility in May 1983. Petitioner then submitted the certificate to the New York City Real Property Assessment Bureau and the New York City Tax Commission requesting a remission certificate for the tax year 1983-1984. In April 1984, the Tax Commission issued a remission letter which did not grant petitioner the 100% exemption provided by RPTL 421-a.
Petitioner then commenced this CPLR article 78 proceeding seeking, inter alia, a nullification of the Tax Commission’s determination, directing the respondents to refund the appropriate sum and adjudging the determination of the Tax Commission to be arbitrary and capricious.
Respondents answered the petition, alleging that petitioner is barred from recovering any refund because payment of the tax had been made without protest, and raising an objection in point of law that the petition fails to state a cause of action.
*305 Following submission, because of the incomplete factual exposition by respondents and the importance of the issues presented, the court asked the parties to submit further affidavits clarifying their respective positions. The parties now agree that the nonresidential use of space in the building does not exceed 12%, and the following facts are also not in dispute: During the 1983-1984 tax year the building was under construction, and a certificate of occupancy was issued in June 1984. For that same year, the transitional assessed value of the property was $12,156,000 and the amount of the remission valuation computed by respondent was $10,534,309, leaving a taxable valuation of $1,621,691 and a mini-tax valuation of $757,000.
Petitioner contends that it is entitled to the full exemption granted by RPTL 421-a, and that its taxable valuation should be the amount of the mini-tax and not the $1,600,000 computed by respondents.
The respondents contend that the following method of valuation is correct: The assessor valued the entire property as if it were a rental property and then apportioned the total value between the residential and commercial portions based on their relative market values. Each unit was then allocated its valuation relative to its market value on that portion of the property.
The residential units have 89% of the space, but constitute approximately 92% of the "common interest” elements. The taxable valuation for the residential portion was computed by multiplying the per cent of common interest by the amount of the mini-tax (.92 X $757,000 = $699,575).
The commercial units constitute 11% of the space but have over 7% of the common interest. The commercial units, however, were not charged their share of the mini-tax base since they were valued at the normal rate without exemption ($922,116). The taxable valuation of the property was thus a total of $1,621,691.
Respondents contend that the RPTL 421-a exemption is not available to petitioner’s commercial units because it is a condominium building. RPTL 421-a (1) (c) defines a multiple dwelling as: "[a] dwelling which is to be occupied or is occupied as the residence or home of three or more families living independently of one another, whether such dwelling is rented or owned as a cooperative or condominium” (emphasis supplied). The section then goes on to provide that new multiple *306 dwellings (except hotels) in cities over 1,000,000 "shall be exempt from taxation for local purposes * * * during construction and * * * for a period not to exceed ten years * * * following the completion [of construction]” as follows:
"(i) except as otherwise provided herein there shall be full exemption from taxation during construction and for two years following the completion of construction;
"(ii) followed by two years of exemption from eighty per cent of such taxation;
"(iii) followed by two years of exemption from sixty per cent of such taxation” (RPTL 421-a [2] [a]).
Subdivision (2) (d) provides that: "if the aggregate floor area of commercial, community facility and accessory use space exceeds twelve per cent of the aggregate floor area * * * tax exemption shall be reduced by an amount equal to the per cent of the aggregate floor area by which the aggregate floor area of commercial, community facility and accessory use space exceeds twelve per cent of the aggregate floor area of the multiple dwelling”.
Notwithstanding the plain language of the statute, the respondents contend that the RPTL 421-a exemption does not apply to the commercial space in a condominium, because this form of ownership creates divided legal ownership of the parcel of real property, while the statute was written in anticipation of unitary ownership of the entire property. Respondents rely upon a statement in Teleon Realty Corp. v City of New York (88 Misc 2d 767, mod 68 AD2d 858, affd 50 NY2d 824), but later overruled by Hewlett Assoc. v City of New York (57 NY2d 356) on other grounds. In Teleon, Trial Term had remarked: "It should be recognized that the statute is written (as is the amendment) in anticipation of single ownership.” (88 Misc 2d, at p 771.)
The statute that court refers to is RPTL 421, and the amendment referred to is the 1975 amendment. (Hereafter, generally, RPTL 421-a pursuant to the 1977 renumbering of that section.)
When section 421 was enacted in 1971, there was no exemption for commercial space. In 1975, section 421 was amended and commercial, community and accessory use space not exceeding 12% for the first time came under the exemption. The issue posed in Teleon (supra) was how the mini-tax was to *307 be apportioned between commercial and residential space, and not whether condominiums were excluded.
The Trial Term opinion offers no supporting authority for the proposition that either section 421 or 421-a were enacted "in anticipation of single ownership.” A review of legislative memoranda and the New York Legislative Annual for 1971 and 1975 does not support that assertion. It would be more accurate to say, as the Appellate Division did in modifying Trial Term, to state that: "[S]ection 421 of the Real Property Tax Law, as originally enacted, did not contemplate a combined commercial and residential development”. (Teleon Realty Corp. v City of New York, 68 AD2d, at p 859.)
In its opinion, the Appellate Division made no statement that the 1975 amendment contemplated single ownership.
The rules of statutory construction are clear that where the "words of a statute are free from ambiguity and express plainly, clearly and distinctly the legislative intent, resort may not be had to other means of interpretation.” (McKinney’s Cons Laws of NY, Book 1, Statutes § 76.)
Where the intent of the Legislature is to be determined from the language used, the statutory language must be construed according to its natural and most obvious sense (McKinney’s Cons Laws of NY, Book 1, Statutes § 94). All parts of a statute must be harmonized, and meaning must be given, if possible, to the entire statute and to every part and word thereof. (McKinney’s Cons Laws of NY, Book 1, Statutes §§ 98, 231.)
Respondents’ contention, in plain terms, is that when the Legislature in this section defined the term "multiple dwelling” to include a condominium, it did not mean what it said because the 1975 amendment contemplated "single ownership” of property. This position is so plainly violative of the rules of statutory construction that it would not deserve mention, but for the remark in Teleon (supra). To the extent that the Trial Term opinion in Teleon contradicts the plain meaning of the statute, it must be considered dictum, and of no precedential value.
Respondents alternatively contend that the intent of the Legislature in passing section 421-a was to exempt no more than 12% of the commercial, accessory and community facility space that is "incidental” to the residential use of the building.
Respondents seek support for this position by citing Hewlett *308 Assoc. v City of New York (57 NY2d 356, 367-368, supra), where the court noted that the legislative intent of creating affordable housing "is not encouraged by extending the exemption to commercial areas”.
The citation is inapposite since this, of course, was a reference to RPTL 421 as enacted in 1971, and not to the 1975 amendment which became section 421-a.
There is no support in the statute for the proposition that only commercial space that is "incidental” to residential use is eligible for the exemption. Such a position will not withstand analysis.
First, this court must presume that when the Legislature granted a full exemption if the "commercial, community facility and accessory use space” did not exceed 12% (RPTL 421-a [2] [d]), it meant to exempt "commercial” space or it would not have used that word.
Second, respondents’ "incidental” use argument is based on a tortured reading of Hewlett (supra). The court there held that the 1975 amendment provided for a "diminution” of the exemption previously granted for accessory use space so that all commercial, accessory and community facility space, however proportioned, cannot exceed 12% without reduction of the percentage of exemption. Respondents, however, conceive this to mean that since the 1975 amendment diminished the exemption previously granted to areas "customarily incidental to actual residential living area”, then the diminution must also apply to commercial space that is incidental to the residential living area.
Exempted commercial space, so long as it is less than 12%, need not be "incidental” to residential space to qualify for the exemption. Although in certain cases, as for example the parking garage here, space may be both commercial and accessory use space (see, Hewlett Assoc. v City of New York, supra, at p 361), certain commercial space, such as the children’s wear store in this building, in no way can be considered incidental to the residential space. The illogicality of respondent’s position is highlighted by the fact that the children’s wear store space would be granted full exemption if the building were owned as a cooperative or a rental building, although it is no more "incidental” to residential living in those forms of ownership than in a condominium building.
Respondent’s position is complicated further by its method of valuation, since respondents give effect to the statute in the *309 residential portions, but not to the commercial units. Respondents claim that this is proper because the intent of section 421-a was to encourage residential construction, and the exemption of commercial units in a condominium building does nothing to encourage residential construction. Apparently, the respondents envision the City of New York as requiring only monolithic residential apartment buildings without shopping or parking facilities. The Legislature evidently thought otherwise when it allowed the full extent of the exemption to those buildings containing less than 12% of commercial space.
Respondents also contend that Real Property Law § 339-y requires that each condominium be separately assessed and taxed, and, therefore, the section 421-a exemption does not apply to condominiums. The reasoning behind this argument is not made clear by respondents, but the apparent argument is that the 12% exemption should be applied on a condominium unit basis rather than a building-wide basis, and, therefore, residential apartments are each entitled to the full exemption as 100% residential, whereas commercial units are entitled to no exemption because they each are 100% nonresidential.
There is no support for this distinction in RPTL 421-a. Further, RPTL 581 (1) (a) states: "Notwithstanding any other provision of law, real property owned or leased by a cooperative corporation or on a condominium basis shall be assessed for purposes of this chapter at a sum not exceeding the assessment which would be placed upon such parcel were the parcel not owned or leased by a cooperative corporation or on a condominium basis.”
Respondents concede that if this same building were owned cooperatively or rented, the owner of the commercial space would be entitled to the full exemption.
Respondents, rather than creating harmony between RPTL 421-a and Real Property Law § 339-y by giving effect to both statutes, have chosen to construe Real Property Law § 339-y in a manner which negates the purpose of RPTL 421-a. No such construction is necessary. If any of the five commercial condominium units in question here were cooperative units, the same percentage of space would be used, and they should have the same market value.
Respondents agree that RPTL 581 provides that the "total” assessment value of a condominium building cannot exceed the value it would have if it were rental property, but urge *310 that RPTL 581 does not set forth the manner by which the total assessment is to be apportioned among unit owners, and that valuation of condominium property is to be computed on a unit-by-unit basis pursuant to Real Property Law § 339-y.
In its prior decision the court continued: Even assuming, arguendo, the foregoing to be true, the logic of respondents’ position is not apparent, since in fact the "total” taxable valuation which respondents have computed for the building is more than twice that of the mini-tax which would be applicable if the property were rented.
On reargument, respondent contends that this court confused "assessed valuation” and "taxable valuation” in RPTL 581 since that section refers only to assessed valuation and that these words are not the same as evinced by RPTL 1805. The argument is not developed further.
Respondents’ truncated argument does not reveal what practical significance the interchange of these words has on the particular facts present here and RPTL 1805 provides no answer. That section provides that, in circumstances not relevant to the present issue, property will be taxed at the lower of the actual valuation or a "transitional valuation.” Respondents do not contend that RPTL 1805 applies here nor do they contend that the "assessed valuation” and "taxable valuation” for the property were, in fact, different.
Respondents have failed to demonstrate any reason why the prior order of the court should be vacated, but the issue need not be disposed on this ground.
The substance of respondents’ argument on the interplay of Real Property Law § 339-y and RPTL 421-a is as follows: Real Property Law § 339-y (1) (a) provides that each condominium unit shall be deemed a separate parcel and "shall be subject to separate assessment and taxation”. Respondents then reason that the section 421-a exemption cannot be applied to the commercial units of a condominium because the exemption applies only to residential units.
It is difficult to find a clear path in this argument without becoming entangled in contentions previously rejected. To the extent that respondents now agree with the court’s prior observation that the purpose of enacting RPTL 421-a was not merely to create additional housing, but in recognition of the "thousands of construction jobs that are created” and the long-term increment in the city’s ratable tax base (see, 1975 NY Legis Ann, at 303), the basis for respondents’ distinction between residential and commercial property attenuates.
*311 There can be little doubt that the primary purpose of RPTL 421 was to create additional housing, but given the Legislature’s subsequent and unambiguous intention of permitting up to 12% of the nonresidential space in a multiple dwelling to receive the benefits of section 421-a, the most basic of respondents’ arguments (that the exemption applies only to residential property) is shaken to its roots. Indeed, had the intent of the Legislature been to encourage residential construction exclusively, it would have sought to penalize other uses in multiple dwellings. Enactment of the 1975 amendment demonstrates that the Legislature encouraged the use of 12% of the space for commercial and other nonresidential use.
Further, RPTL 102 (2) defines assessment as the valuation of real property "including the valuation of exempt real property” and RPTL 581 provides that notwithstanding any other provision of law a condominium shall be assessed as if it were rental property.
Respondents have not stated what the assessed valuation of the commercial units was, only the taxable valuation. If respondents valued the entire property as if it were a rental (RPTL 102, 581) and the section 421-a exemption were applied, the assessed valuation of the entire property would be $757,000 (the mini-tax). Respondents state that they made this computation and credited the residential portions with their share of the mini-tax for an assessed valuation and taxable valuation of $699,575. This would leave an assessed valuation of $57,425 for the commercial units but they were charged a taxable valuation of $922,166. It is apparent that this could only be done by ignoring RPTL 421-a or RPTL 581.
This court sees no difficulty in interpreting these statutory provisions to mean that an entire condominium building should be assessed as a rental property and that from that figure each condominium unit should then be valued and taxed its respective percentage of the common interest.
No argument that respondents have made on this motion to reargue has persuaded this court that the Legislature intended to exempt, assess or tax condominium buildings any differently than cooperatives or rental property.
On reargument, the respondents also seek to vacate the prior order because the court appeared to be laboring under a misconception as to the complete state of the facts. The court previously stated that respondents had originally granted the section 421-a exemption to commercial units, but commenced *312 denying the exemption in 1983, and commented that this was a "jack-in-the-box” style of taxation. The factual statement was derived from respondents’ brief which stated: "Properties such as petitioner’s which qualified for 421-a exemption after July 1, 1975, have at all times been granted this exemption where it applies.” Given the denial of the exemption to petitioner in 1983, the court understood this to mean that the respondents had changed their method of computing the section 421-a exemption. Both parties agree that the court’s prior factual statement is in error, and that respondents have consistently disallowed the section 421-a exemption to the commercial portion of condominium buildings. Respondents are therefore entitled to a clarification of their position, but not to a vacatur of the prior judgment, since this correction is irrelevant to the disposition of legal issues previously decided.
The court adheres to its prior determination that denial of the full exemption to petitioner because the property is owned as a condominium is arbitrary, capricious and contrary to law.